**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

**BRIAN RILEY**, Individually and on Behalf of a Class of All Others Similarly Situated,

Plaintiff,

v.

**ADVANCE AUTO PARTS, INC.,**

Defendant.

Case No. 5:24-cv-00397

**CLASS ACTION COMPLAINT**

**<u>Jury Trial Demanded</u>**

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action against Advance Auto Parts, Inc. ("AAP" or "Defendant") for its failure to adequately secure and safeguard his and other similarly situation individuals' personally identifying information ("PII"), including but not limited to names and email addresses.

2. AAP is a retailer of automotive aftermarket parts located in Raleigh, North Carolina. As of April 20, 2024, it operates 4,777 stores primarily in the United States.[1]

3. AAP has reported revenue exceeding $11 billion and employs over 67,000 people.[2]

4. On information and belief, starting in or about mid-April 2024, an unauthorized party began a series of hacks into the systems of Snowflake, Inc., which is Advanced Auto's cloud storage vendor, ultimately obtaining the PII of approximately 358,000 current and former employees of AAP, as well as 380 million AAP customer profiles, including Plaintiff's (the "Data Breach").[3]

---

[1] *See* https://www.bleepingcomputer.com/news/security/advance-auto-parts-confirms-data-breach-exposed-employee-information/ (last accessed July 8, 2024).
[2] *See* https://cybernews.com/news/advance-auto-parts-confirms-breach/ (last accessed July 8, 2024).
[3] *See* https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/ (last accessed July 8, 2024).

5. The hackers accessed and infiltrated Defendant's systems including, at the very least names, emails, phone numbers, and addresses.[4]

6. In its recent Form 8-K filed with the Securities and Exchange Commission, AAP stated that "[o]n May 23, 2024, [AAP] identified unauthorized activity within a third-party cloud database environment containing [AAP] data and launched an investigation with industry-leading experts. On June 4, 2024, a criminal threat actor offered what it alleged to be [AAP] data for sale. [AAP] has notified law enforcement."[5]

7. As a result of the Data Breach, which Defendant failed to prevent, the PII of AAP's current and former employees, employment candidates, and customers, including Plaintiff and the proposed Class Members, was stolen.[6]

8. Instead, Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard its customers' PII and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

9. Further exacerbating Plaintiff's injuries, Defendant has yet to formally inform Plaintiff of the Data Breach. Instead, Plaintiff learned that his PII was implicated through the website "have I been pwned," which tracks personal data released to the dark web.[7]

10. As such, Defendant has offered insufficient assurances that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its

---

[4] *See* https://www.bleepingcomputer.com/news/security/advance-auto-parts-confirms-data-breach-exposed-employee-information/; https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/ (last accessed July 8, 2024).
[5] *See* https://www.sec.gov/Archives/edgar/data/1158449/000115844924000162/aap-20240523.htm (last accessed July 8, 2024).
[6] *See* https://www.bleepingcomputer.com/news/security/advance-auto-parts-confirms-data-breach-exposed-employee-information/; https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/ (last accessed July 8, 2024).
[7] *See e.g.* https://haveibeenpwned.com/ (last accessed July 8, 2024).

security practices or dedicated sufficient resources and staff to avoid a similar breach of its network in the future.

11. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their PII; (b) diminution of value of their PII; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen PII; (e) illegal sales of the compromised PII; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

12. Plaintiff and Class Members would not have provided their valuable PII had they known that Defendant would make their PII Internet-accessible, not encrypt personal and sensitive data elements and not delete the PII it no longer had reason to maintain.

13. Through this lawsuit, Plaintiff seek to hold Defendant responsible for the injuries they inflicted on Plaintiff and Class Members due to its impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the PII that remains in Defendant's possession.

14. The exposure of one's PII to cybercriminals cannot be reversed. Before this Data Breach, Plaintiff's and the Class's PII was as it should be - private. Now, their PII is forever exposed and unsecured.

15. The potential for improper disclosure and theft of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the PII left them vulnerable to an attack.

16. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct as the PII that they collected and maintained is now in the hands of data thieves and other unauthorized third parties.

17. Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' PII that they collected and maintained, and its failure to provide timely and adequate notice to Plaintiff and Class Members of the types of information accessed, and that such information remains subject to unauthorized access by cybercriminals.

18. Accordingly, Plaintiff, on behalf of himself and the Class, asserts claims for negligence, negligence per se, invasion of privacy, breach of implied contract, unjust enrichment, and declaratory/injunctive relief.

## PARTIES

### A. Plaintiff

19. Plaintiff Brian Riley is a resident and citizen of Massachusetts, residing in Hopkinton, Massachusetts.

### B. Defendant

20. Defendant Advance Auto Parts, Inc. is a Delaware corporation with its headquarters and principal place of business located at 4200 Six Forks Rd., Raleigh, NC 26709.

## JURISDICTION AND VENUE

21. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is over 100,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22. This Court has jurisdiction because Defendant's headquarters and principal place of business are in this District.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because it is the District within which Defendant has the most significant contacts.

## FACTUAL BACKGROUND

### A. AAP's Business and Collection of Plaintiff's and Class Members' PII.

24. In the ordinary course of its business practices, Defendant stores, maintains and uses Plaintiff's and Class Members' PII.

25. Defendant agreed to and undertook legal duties to maintain the PII of Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

26. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible to protect Plaintiff's and Class Members' PII from unauthorized disclosure and that such an attempt to obtain said information was foreseeable.

27. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

28. Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosure of this PII.

29. Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their PII, which includes information that is static, meaning it does not change and can be used to commit myriad of financial crimes.

30. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

31. Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained and to only make authorized disclosures of this information, which Defendant ultimately failed to do.

### B. The April Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members

32. Around mid-April 2024, a cybercriminal began a series of hacks into Snowflake's systems, ultimately obtaining 380 million customer profiles, as well as the Social Security

numbers and driver's license numbers of approximately 358,000 current and former employees of AAP.

33. Plaintiff's and Class Members' PII is currently posted on the dark web, revealed by a known cybercriminal who uses the handle "Sp1d3r.[8]"

34. On information and belief, AAP's customers' PII was stolen from its Snowflake cloud storage account.[9]

35. Plaintiff and, on information and belief, other Class Members, have yet to receive a notice of the Data Breach from Defendant. Rather, Plaintiff was informed that his PII was available on the dark web through a website called "have I been pwned," which tracks personal data released to the dark web.[10]

36. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of PII.

37. Plaintiff and Class Members provided their PII to Defendant AAP with the reasonable expectation and mutual understanding that Defendant AAP would comply with its obligations to keep such PII confidential and secure from unauthorized access and to provide timely notice of any security breaches.

38. Defendant AAP's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

39. Defendant AAP knew or should have known that its electronic records would be targeted by cybercriminals.

---

[8] *See* https://www.scmagazine.com/brief/advance-auto-parts-allegedly-breached-via-snowflake-account; https://nationalcioreview.com/articles-insights/extra-bytes/latest-snowflake-victim-advance-auto-parts-targeted-in-major-data-breach/ (last accessed July 8, 2024).
[9] *Id.*
[10] *See e.g.* https://haveibeenpwned.com/ (last accessed July 8, 2024).

### C. **<u>Defendant Breached Its Duties to Plaintiff and the Class Members and Failed to Comply with Regulatory Requirements and Industry Practices.</u>**

40. Because Defendant was entrusted with PII at all times herein relevant, Defendant owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to its networks and systems. Defendant also owed a duty to safeguard PII because they were on notice that they were handling highly valuable data and knew there was a significant risk it would be targeted by cybercriminals. Furthermore, Defendant knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

41. Security standards commonly accepted among companies like Defendant AAP, that store PII include, without limitation:

i. Maintaining a secure firewall configuration;

ii. Monitoring for suspicious or irregular traffic to servers or networks;

iii. Monitoring for suspicious credentials used to access servers or networks;

iv. Monitoring for suspicious or irregular activity by known users;

v. Monitoring for suspicious or unknown users;

vi. Monitoring for suspicious or irregular server requests;

vii. Monitoring for server requests for PII;

viii. Monitoring for server requests from virtual private networks (VPNs); and

ix. Monitoring for server requests for Tor exit nodes.

42. The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[11] and protection of PII which includes basic security standards applicable to all types of businesses.[12]

43. The FTC recommends that businesses:

i. Identify all connections to the computers where sensitive information is stored.

ii. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting its business.

iv. Scan computers on its network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v. Pay particular attention to the security of its web applications—the software used to give information to visitors to its websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi. Use a firewall to protect its computers from hacker attacks while it is connected to a network, especially the internet.

vii. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the

[11] Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[12] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from its system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

44. As described further below, Defendant owed a duty to safeguard PII under several statutes, including the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), to ensure that all information it received, maintained, and stored was secure. These statutes were enacted to protect Plaintiff and the Class Members from the type of conduct in which Defendant engaged, and the resulting harms Defendant proximately caused Plaintiff and the Class Members.

45. Under the FTC Act, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

46. Defendant breached its duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of services to its employees or customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Member's confidential and private information.

Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendant also violated its duties under the FTC Act.

47. Defendant failed to prevent the Data Breach. Had Defendant properly maintained and adequately protected its systems, servers, and networks, the Data Breach would not have occurred.

48. Additionally, the law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their private information. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members.

**D. <u>The Experiences of Plaintiff Brian Riley</u>**

49. Plaintiff is a frequent and loyal customer of AAP.

50. Plaintiff was informed on June 24, 2024 that his PII was listed on the dark web as a result of the Data Breach. However, Plaintiff has yet to receive a formal notice of the Data Breach from Defendant.

51. The lack of notice provided to Plaintiff regarding the Data Breach has caused him immeasurable distress.

52. Further, Plaintiff has not been offered any remedial measures by Defendant to protect his PII from hackers and cybercriminals on the dark web.

53. As a proximate result of the Data Breach and Defendant's lack of notice, Plaintiff has spent time and will continue to spend time for the foreseeable future and beyond dealing with the Data Breach's consequences, including by and self-monitoring his accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time has been and will continue to be lost forever and cannot be recaptured.

54. Plaintiff has experienced distress, anxiety and stress because his personal information was compromised in the Data Breach, the uncertainty surrounding how Defendant came to possess his information in the first instance, and not knowing who stole his information or for what purpose. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

55. Plaintiff has also observed unexplained anomalies in his credit report since the Data Breach, which on information and belief resulted from the Data Breach, and which are negatively affecting his credit, business and livelihood.

56. Plaintiff suffered actual injuries in the form of damages to and diminution in the value of his PII—a form of intangible property that was entrusted to Defendant, which was compromised in and as a proximate result of the Data Breach.

57. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from his PII being obtained by unauthorized third parties and possibly cybercriminals.

58. Plaintiff has a continuing interest in ensuring that his PII, which remains within Defendant's possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

59. Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's harmful effects by failing to promptly notify him about it. Instead, ***Defendant has yet to send Plaintiff a notice of the Data Breach***, without any explanation whatsoever.

### E. <u>Plaintiff the Class Suffered Actual and Impending Injuries Resulting from the Data Breach</u>

60. As a proximate result of Defendant's completely unreasonable security practices, identity thieves now possess the sensitive PII of Plaintiff and the Class and this confidential data is readily available on the dark web. That information is extraordinarily valuable on the black market and incurs direct costs to Plaintiff and the Class. On the dark web—an underground internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up

to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[13] And, "[t]he damage to affected [persons] may never be undone."[14]

61. Unlike simple credit card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an identity theft victim was $1,160 per person.[15] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[16]

62. As a consequence of the Data Breach, Plaintiff's and Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Plaintiff and Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially

---

[13] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.

[14] *Id.*

[15] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[16] *Id.*

impairs Plaintiff's and Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

63. Defendant's failure to send Data Breach notices to affected persons does not provide adequate remediation and compensation for its wrongful conduct and actions described herein.

## CLASS ACTION ALLEGATIONS

64. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of the following nationwide class (the "Class"):

> All persons whose PII was compromised in the Data Breach discovered by AAP in April 2024, including all persons who were sent a notice of the Data Breach by Defendant or learned of the Data Breach through other means (and each person a "Class Member").

65. Excluded from the Class are any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

66. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

67. ***Numerosity Under Rule 23(a)(1).*** The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Class in a single action will provide substantial benefits to the parties and the Court. Although the precise number of members of the Class is unknown to Plaintiff at this time, on information

and belief, the proposed Class contains millions of individuals.[17] Discovery will reveal, through Defendant's records, the actual number of members of the Class.

68. ***Commonality Under Rule 23(a)(2)***. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Class. These common questions, which do not vary among members of the Class, and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

a. Whether Defendant knew or should have known that its computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b. Whether Defendant failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that its computer systems and networks were protected;

c. Whether Defendant failed to take available steps to prevent and stop the Data Breach from occurring;

d. Whether Defendant owed a legal duty to Plaintiff and Class Members to protect their PII;

e. Whether Defendant breached any duty to protect the PII of Plaintiff and Class Members by failing to exercise due care in protecting their sensitive and private information;

f. Whether Defendant provided timely, accurate, and sufficient notice of the Data Breach to Plaintiff and the Class Members;

g. Whether Plaintiff and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

---

[17] *See* https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/ (last accessed July 8, 2024).

h. Whether Plaintiff and Class Members are entitled to injunctive or equitable relief, including restitution.

69. ***Typicality Under Rule 23(a)(3).*** Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Defendant's uniformly unlawful course of conduct injured Plaintiff and Class Members in the same wrongful acts and practices. Likewise, Plaintiff and other Class Members must prove the same facts in order to establish the same claims.

70. ***Adequacy of Representation Under Rule 23(a)(4).*** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation, data breach cases, and consumer protection class action matters such as this action, and Plaintiff and his counsel intend to vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiff and his counsel have no interests adverse to those of the other members of the Class.

71. ***Predominance and Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Even if each Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

72. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach.

73. As a result of the foregoing, class treatment under Federal Rule of Civil Procedure 23 is appropriate.

**FIRST CLAIM FOR RELIEF**
**Negligence**
***(On Behalf of Plaintiff and the Nationwide Class)***

74. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

75. In the ordinary course of providing goods and services to its customers and employing its staff, Defendant solicited, gathered, and stored the PII of Plaintiff and Class Members. Because Defendant was entrusted with such PII at all times herein relevant, it owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to its networks and systems. This duty arose independently from any contract.

76. Defendant knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that its failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising

both the way the PII was stored, used, and exchanged, and those in its employ responsible for such tasks.

77. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

78. Defendant also had a common law duty to prevent foreseeable harm to others. Defendant had full knowledge of the sensitivity and high value of the PII that they stored and the types of foreseeable harm and injury-in-fact that Plaintiff and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. Defendant's conduct created a foreseeable and unreasonable risk of harm to Plaintiff and Class Members, who were the foreseeable victims of Defendant's inadequate data security practices.

79. Defendant violated its duty to implement and maintain reasonable security procedures and practices, including through its failure to adequately restrict access to its file systems and networks that held hundreds of thousands of individuals' PII or encrypt or anonymize such data. Defendant's duty included, among other things, designing, maintaining, and testing Defendant AAP's information security controls to ensure that PII in its possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

80. Defendant's duty of care also arose by operation of statute, as follows:

a. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members; and

81. The FTC Act was enacted to protect Plaintiff and the Class Members from the type of wrongful conduct in which Defendant engaged.

82. Defendant breached its duty to exercise reasonable care in protecting Plaintiff's' and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of goods and services to its customers and persons within its employ, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and copying and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures that deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendant also violated its duties under the FTC Act.

83. The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendant further breached its duties by failing to provide such reasonably timely notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members. Timely disclosure was necessary so that Plaintiff and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

84. As stated in Defendant AAP's November 2, 2023, Form 8-K, its revenue was at $262.2 billion for the fiscal year. As such, it had the financial and personnel resources necessary to prevent the Data Breach. Defendant nevertheless failed to adopt reasonable data security measures, in breach of the duties it owed to Plaintiff and Class Members.

85. Plaintiff and Class Members had no ability to protect their PII once it was in Defendant's possession and control. Defendant was in an exclusive position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

86. But for Defendant's breach of its duty to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of Defendant's negligence, Plaintiff and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between Defendant's failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiff and Class Members.

87. As a direct and traceable result of Defendant's negligence, Plaintiff and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiff and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendant; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect the personal information in its possession; and (viii) future

costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

88. Defendant's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendant's care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

89. Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CLAIM FOR RELIEF
**Negligence *Per Se***
***(On Behalf of Plaintiff and the Nationwide Class)***

90. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

91. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to maintain fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

92. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' PII.

93. Defendant's duty to use reasonable care in protecting confidential and sensitive data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential PII.

94. Defendant violated its duties under Section 5 of the FTC Act by failing to use reasonable or adequate data security practices and measures to protect Plaintiff's and the Class's

PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII that Defendant collected and stored and the foreseeable consequences of a cybersecurity data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

95. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

96. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and Class Members, Plaintiff and the Class Members would not have been injured.

97. The injuries and harms suffered by Plaintiff and the Class Members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that they were failing to meet its duties and that its breach would cause Plaintiff and the Class Members to suffer the foreseeable harms associated with the exposure of their PII.

98. Defendant's various violations and its failure to comply with the applicable laws and regulations referenced above constitute negligence *per se*.

99. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

100. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and are subject to further unauthorized disclosures

so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

**THIRD CLAIM FOR RELIEF**
**Invasion of Privacy**
***(On Behalf of Plaintiff and the Nationwide Class)***

101. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

102. Plaintiff and Class Members have a legally protected privacy interest in their PII, which is and was collected, stored, and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

103. Plaintiff and Class Members reasonably expected that Defendant would protect and secure their PII from unauthorized parties and that their private information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

104. Defendant unlawfully invaded the privacy rights of Plaintiff and Class Members by engaging in the wrongful conduct described above, including by failing to protect their PII by permitting unauthorized third parties to access, exfiltrate, copy, and view this private information. Likewise, Defendant further invaded the privacy rights of Plaintiff and Class Members and permitted cybercriminals to invade the privacy rights of Plaintiff and Class Members, by unreasonably and intentionally delaying disclosure of the Data Breach, and failing to properly identify what PII had been accessed, exfiltrated, copied, and viewed by unauthorized third parties.

105. This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiff's and the Class Members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

106. Plaintiff's and the Class Members' PII is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged

with safeguarding it. Further, the public has no legitimate concern in Plaintiff's and the Class Members' PII, and such private information is otherwise protected from exposure to the public by various statutes, regulations, and other laws.

107. The disclosure of Plaintiff's and the Class Members' PII to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

108. Defendant's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiff's and the Class Members' sensitive, PII is such that it would cause serious mental injury, shame, embarrassment, or humiliation to people of ordinary sensibilities.

109. The unauthorized access, exfiltration, and disclosure of Plaintiff's and the Class Members' PII was without their consent, and in violation of various statutes, regulations, and other laws.

110. As a result of the invasion of privacy caused by Defendant, Plaintiff and the Class Members suffered and will continue to suffer damages and injuries as set forth herein.

111. Plaintiff and the Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems just and proper.

## FOURTH CAUSE OF ACTION
**Breach of Implied Contract**
***(On Behalf of Plaintiff and the Nationwide Class)***

112. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

113. This claim is pleaded in the alternative to Plaintiff's unjust enrichment and quasi-contract claim, *infra*.

114. Through their course of conduct, Plaintiff and the Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect their

confidential and private PII and to timely and accurately notify Plaintiff and Class Members if their information had been breached and compromised.

115. Defendant acquired, stored, and maintained the PII of Plaintiff and the Class that they received either directly from them or that Defendant otherwise received from other third parties.

116. Plaintiff and Class Members were required to provide, or authorize the transfer of, their private information for Defendant to provide goods and services, or for purposes of employment. Plaintiff and Class Members paid money, or money was paid on their behalf, or provided services to Defendant in exchange for such services.

117. Defendant solicited, offered, and invited Class Members to provide their private information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their private information to Defendant.

118. Defendant accepted possession of Plaintiff's and Class Members' PII for the purpose of providing goods and services to Plaintiff and Class Members.

119. When Plaintiff and Class Members paid money and provided their PII to Defendant, either directly or indirectly, in exchange for goods and services, they entered into implied contracts with Defendant and intended and understood that PII would be adequately safeguarded as part of that service.

120. Defendant's implied promise of confidentiality to Plaintiff and Class Members includes consideration beyond those pre-existing general duties owed under the FTC Act or other state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

121. Defendant's implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) taking steps to ensure that the information that is placed in the control of its agents is restricted and limited to achieve an authorized purpose; (c) restricting access to qualified and trained

agents; (d) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (e) applying or requiring proper encryption; (f) multifactor authentication for access; and (g) other steps to protect against foreseeable data breaches.

122. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to their PII will also protect the confidentiality of that data; (2) taking steps to ensure that the PII that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the PII against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (7) taking other steps to protect against foreseeable data breaches.

123. Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an implied contract. Had Defendant disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their PII to Defendant.

124. Defendant recognized that Plaintiff's and Class Members' PII is highly sensitive and must be protected and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

125. Plaintiff and the Class Members fully and adequately performed its obligations under the implied contracts with Defendant.

126. Defendant breached the implied contracts they made with Plaintiff and the Class Members by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

127. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial, or alternatively, nominal damages. Plaintiff and Class Members are also entitled to

injunctive relief requiring Defendant to strengthen its data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment / Quasi-Contract**
***(On Behalf of Plaintiff and the Nationwide Class)***

128. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

129. This claim is pleaded in the alternative to Plaintiff's breach of implied contract claim, *supra*.

130. A monetary benefit was directly and indirectly conferred upon Defendant through its receipt of Plaintiff's and Class Members' PII, which Defendant used to facilitate the provision of goods and services or for purposes of employment. Defendant appreciated or had knowledge of these benefits conferred upon them by Plaintiff and the Class.

131. Under principles of equity and good conscience, Defendant should not be permitted to retain the full monetary value of the benefits because Defendant failed to adequately protect Plaintiff's and Class Members' PII.

132. Plaintiff and the Class Members have no adequate remedy at law. Defendant continues to retain their PII while exposing this sensitive and private information to a risk of future data breaches while in Defendant's possession. Defendant also continues to derive a financial benefit from using Plaintiff's and Class Members' PII.

133. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have suffered various types of damages alleged herein.

134. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by them because of its misconduct described herein and the Data Breach.

## SIXTH CLAIM FOR RELIEF
**Injunctive/Declaratory Relief**
***(On Behalf of Plaintiff and the Nationwide Class)***

135. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

136. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

137. Defendant owes a duty of care to Plaintiff and Class Members, which required Defendant to adequately monitor and safeguard Plaintiff's and Class Members' PII.

138. Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiff and Class Members.

139. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and the risk remains that further compromises of their private information will occur in the future.

140. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure the PII of Plaintiff and the Class within its care, custody, and control under common law and Section 5 of FTC Act;

b. Defendant breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c. Defendant's existing data monitoring measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiff and the Class within Defendant's custody, care, and control; and

d. Defendant's ongoing breaches of said duties continue to cause harm to Plaintiff and the Class.

141. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect the PII of Plaintiff and the Class within its custody, care, and control, including the following:

a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendant's obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems, networks, and servers on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii. Encrypting and anonymizing the existing PII within its servers, networks, and systems to the extent practicable, and purging all such information which is no longer reasonably necessary for Defendant to provide adequate services to its customers and other employees;

iii. Engaging third-party security auditors and internal personnel to run automated security monitoring;

iv. Auditing, testing, and training its security personnel regarding any new or modified procedures;

v. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems, networks, and servers;

vi. Conducting regular database scanning and security checks; and

vii. Routinely and continually conducting internal training and education to inform Defendant's internal security personnel how to identify and contain a data breach when it occurs and what to do in response to a breach.

142. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs with Defendant, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

143. The hardship to Plaintiff and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

144. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach or cybersecurity incident with Defendant, thus preventing future injury to Plaintiff and the Class and other persons whose PII would be further compromised.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**NORTH CAROLINA IDENTITY THEFT PROTECTION ACT**
**N.C. Gen. Stat. §§ 75-60 *et seq.***
***(On Behalf of Plaintiff and the Nationwide Class)***

145. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

146. Plaintiff brings this claim on behalf of himself and the Class.

147. Defendant is a business that owns or licenses computerized data that includes Private Information (for the purpose of this count, "Private Information"), as defined by N.C. Gen. Stat. § 75- 61(1).

148. Plaintiff and Class Members are "consumers" as defined by N.C. Gen. Stat. § 75-61(2).

149. Defendant is required to accurately notify Plaintiff and Class Members if it discovers a security breach or receives notice of a security breach (where unencrypted and unredacted Private Information was accessed or acquired by unauthorized persons), without unreasonable delay under N.C. Gen. Stat. § 75-65.

150. Plaintiff's and Class Members' Private Information includes information as covered under N.C. Gen. Stat. § 75-61(10).

151. Because Defendant discovered a security breach and had notice of a security breach (where unencrypted and unredacted Private Information was accessed or acquired by unauthorized persons), it had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by N.C. Gen. Stat. § 75-65.

152. By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated N.C. Gen. Stat. § 75-65.

153. A violation of N.C. Gen. Stat. § 75-65 is an unlawful trade practice under N.C. Gen. Stat. Art. 2A § 75-1.1.

154. As a direct and proximate result of Defendant's violations of N.C. Gen. Stat. § 75-65, Plaintiff and Class Members suffered damages, as alleged above.

155. Plaintiff and Class Members seek relief under N.C. Gen. Stat. §§ 75-16 and 16.1, including treble damages and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**N.C. Gen. Stat. Ann. §§ 75-1.1. *et seq.***
***(On Behalf of Plaintiff and the Nationwide Class)***

156. Plaintiff incorporates by reference and realleges paragraphs 1-73 as if fully set forth herein.

157. Plaintiff brings this claim on behalf of himself and the Class.

158. Defendant advertised, offered, or sold goods or services in North Carolina and engaged in commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

159. Defendant engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or properly secure Plaintiff's and Class Members' Private Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

160. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' Private Information.

161. Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

162. Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, it would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and Class Members. Defendant accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

163. Defendant acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff and Class Members' rights.

164. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, as alleged herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendant's services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

165. Defendant's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. Ann. § 75-8.

166. Plaintiff and Class Members seek all monetary and non- monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Class set forth herein, respectfully requests that the Court order the following relief and enter judgment against Defendant as follows:

A. Certifying this action as a class action under Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent the Class;

B. Declaring that Defendant engaged in the illegal and wrongful conduct alleged herein;

C. Entering judgment for Plaintiff and the Class;

D. Granting permanent and appropriate injunctive relief to prohibit Defendant from continuing to engage in the unlawful or wrongful acts, omissions, and practices described herein and directing Defendant to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

E. Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

F. Awarding statutory or punitive damages and penalties as allowed by law in an amount to be determined at trial;

G. Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of Defendant's unlawful acts, omissions, and practices;

H. Awarding to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

I. Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

J. Granting such further and other relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all claims and issues so triable.

Respectfully Submitted,

Dated: July 10, 2024

*/s/ Scott C. Harris*

Scott C. Harris
N.C. State Bar No.: 35328
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5003
Fax: (919) 600-5035
sharris@milberg.com

Amber L. Schubert (S.B.N. 278696)*
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Fax:(415) 788-0161
aschubert@sjk.law

Edward F. Haber (BBO# 215620)*
Ian J. McLoughlin (BBO# 647203)*
**SHAPIRO HABER & URMY LLP**

One Boston Place, Suite 2600
Boston, MA 02108
Tel: (617) 439-3939
Fax: (617) 439-0134
ehaber@shulaw.com
imcloughlin@shulaw.com

*Counsel for Plaintiff Brian Riley and the Putative Class*

** To Be Admitted Pro Hac Vice*